347 So.2d 1102 (1977)
ZEMOUR, INC., Petitioner,
v.
STATE of Florida DIVISION OF BEVERAGE, Respondent.
No. FF-345.
District Court of Appeal of Florida, First District.
July 20, 1977.
*1103 Charles L. Curtis, Tallahassee, for petitioner.
Charles F. Tunnicliff, Tallahassee, for respondent.
DREW, E. HARRIS (Ret.), Associate Judge.
Zemour, Inc. seeks review of an order of the Division of Beverage denying its application for a beverage license.
Section 561.15(1), Florida Statutes, limits the issuance of a beverage license to persons of good moral character not less than 21 years old and to corporations whose officers are of good moral character and not less than 21 years old.
Section 561.15(2), Florida Statutes, describes certain persons who are automatically excluded from obtaining such license.
In White v. Beary, 237 So.2d 263 (Fla.1st DCA 1970), this court, in disposing of the contention that Section 561.15(1), Florida Statutes, failed to prescribe standards for "good moral conduct", said:
"... We doubt that the legislature could in its infinite wisdom detail each salient standard for good moral character. What constitutes good moral character is a matter to be developed by facts, evaluated by the agency, with a judicial review of same ever available. The subject statute is constitutional... ."
Zemour, Inc.'s application for such a license was denied by the Director. Review of such order was taken and an administrative hearing held. The hearing officer found the owner of the applicant was not of good moral character, making the following findings from evidence submitted by the applicant:
"The Petitioner, Zemour, Inc., through its owner Edgard Zemour, purchased the restaurant known as Left Guard Restaurant located at 7444 Biscayne Boulevard, Miami, Florida. After making the purchase the Petitioner made application to transfer the beverage license held by the Left Guard Restaurant, which license is no. 23-2612-SRX series 4-COP. In addition application was made to change the name of the restaurant from Left Guard Restaurant to La Bonne Maison. These applications to transfer the license and change the name were filed with the State of Florida, Division of Beverage. By letter of February 15, 1977, the Director of the Division of Beverage has denied the transfer and the change of name applications. The denial was premised upon the statement that the application corporate officer, Edgard Zemour was not believed to be of good moral character, as required by § 561.15, F.S.
"In addressing the question of his moral character, the owner and President of Zemour, Inc., Edgard Zemour filed a personal data sheet with the State of Florida, Division of Beverage. This data sheet lists arrests and/or inquiries made by the French Government against Edgard *1104 Zemour. Edgard Zemour gave testimony in the subject hearing on the application for transfer and change of name of the licensed premises, which augmented the personal data sheet.
"In 1956, Edgard Zemour was charged by the French Authorities with car theft or using the car without the permission of the owner. At the time, Edgard Zemour was 18 years of age and he and a friend decided to go dancing and stole someone's car and went to a discotheque to dance. He was arrested and sent to jail for two weeks, followed by four months probation.
"During this same year, 1956, Edgard Zemour was arrested for assault and battery for a fight which he had with an American sailor in a bar in Brest, France. Edgard Zemour was fined approximately $25.00 for that incident.
"From 1953 thru 1963, Edgard Zemour was in the wine business as a salesman, until the French Police told him to not operate in such a capacity, and Edgard Zemour responded by ceasing his activities. In 1958, while in the wine business, as a salesman `door to door', Edgard Zemour was charged with wine fraud. This incident involved his company placing approximately 30 gallons of wine in a cask when a customer wanted 25 gallons, and the customer being charged for the full 30 gallons. Zemour was not convicted of this charge. In 1959, Zemour was charged with abuse of trust while operating the wine business, due to the late arrival of wine which had been purchased by customers. He was not convicted of this offense. In 1960, he was charged on two separate occassions [sic] for wine fraud, in that Zemour was allegedly responsible for the customer paying for 30 gallons of wine when in fact only 25 gallons had been ordered. Edgard Zemour was found not guilty on those two occassions [sic].
"In 1960, Edgard Zemour was charged with indecent conduct with a female for an incident which occurred with a girl in an automobile. This case did not go to court. Edgard Zemour was released from the charge. (This incident relates to the no's 6 and 7 found in his personal data sheet answers.)
"In December 1961, Edgard Zemour was charged with possession of weapons, but was not responsible since this weapon belonged to his father who served in World War I. This charge had been placed by the French Authorities.
"During May 1967, Edgard Zemour was charged with fraud while operating in the textile business. The textile business would mean the clothing business. This charge was placed by the French Authorities and pertained to the activities of one of the salesmen working for a company in which Edgard Zemour was part owner. The salesman had lied about the type of materials used in the clothing and the clothing did not properly fit the customers to whom he had sold the clothing. Zemour, as owner of the corporation for whom the salesman worked, was charged with complicity which is apparently some form of conspiracy. Edgard Zemour had a trial on the issue and the judge found him guilty and placed him on two years probation. Zemour appealed the sentence and the appellate court upheld the conviction and sentenced Zemour to two years in prison. Edgard Zemour learned of the actual sentence before going back to court to face the sentence and fled France until 1972. When Edgard Zemour left France, he went to Isreal [sic].
"While in Isreal [sic], Edgard Zemour was in the restaurant business. On one occasion while Zemour was in the restaurant business, a homicide occurred in his restaurant and the Isreali [sic] police took him to jail and kept him there for 23 to 25 days, after which time he was released when the police found the actual assailant. On one other occasion while living in Isreal [sic] Zemour tried to stop a fight in his restaurant and the police took him to the police station as a part of their investigation of the fighting incident, but subsequently released Zemour from charges.

*1105 "In 1973, Edgard Zemour's father became ill and Edgard Zemour left Isreal [sic] by way of Frankfurt, Germany to return to France to see his father who was thought to be dying. Zemour took the passport of one of the employees in the restaurant in Isreal [sic], and had someone in Frankfurt, Germany place Zemour's picture on the French passport belonging to the restaurant employee. This was done to avoid detection by the French authorities who would arrest Zemour to serve the two year sentence for the fraud case in 1969. When Zemour arrived in France he was arrested for having a false identification and for showing the false identification passport to the French Authorities. He went to court and was given a one month sentence for having a false identification and a one month sentence for showing a false passport to the French Police, in addition to the two year sentence which was pending on the fraud case of 1969. Zemour served between 8 and 9 months on these cases and was placed on probation.
"Edgard was with his brother and uncle and some friends in a bar in France between 4:00 p.m. and 4:15 p.m., during the year 1975. At this time Zemour was on probation and did not wish the police to see him in the bar, although he felt his probation would allow him to be in that bar. A group of policemen entered the bar and shot and killed his brother and uncle and one friend. The police also shot Zemour five times. Zemour claimes [sic] that this incident involved some political dispute in France. Zemour was charged with fighting with the police. Before standing such charge, he spent one year in the hospital most of which time was spent in the prison hospital. Zemour was aquitted [sic] of the offense of fighting with the police and left France.
"In March 1976, Edgard Zemour went to Brussels, Belgium for one week and from there to Martinque for two weeks and subsequently to Miami, Florida, in April of 1976, and has remained in Miami, Florida, since that time."
Moral character, as used in this statute, means not only the ability to distinguish between right and wrong, but the character to observe the difference; the observance of the rules of right conduct, and conduct which indicates and establishes the qualities generally acceptable to the populace for positions of trust and confidence. An isolated unlawful act[1] or acts of indiscretion wherever committed do not necessarily establish bad moral character. But, as shown by the evidence here, repeated acts in violation of law wherever committed and generally condemned by law abiding people, over a long period of time, evinces the sort of mind and establishes the sort of character that the legislature, as Judge Rawls said in Beary, supra, "in its infinite wisdom", has determined should not be entrusted with a liquor license. The applicant here is shown to be one which, in our judgment, falls within that category.
The petition for review is denied.
BOYER, Acting C.J., and MASON, ERNEST E. (Ret.), Associate Judge, concur.
NOTES
[1] When not one included in the prohibitions of Section 561.15(2), Florida Statutes.