# CRIMINAL JUSTICE STANDARDS AND TRAINING COMMISSION v DUKES

## Case No. 84-2971

State of Florida, Division of Administrative Hearings

November 7, 1986

### APPEARANCES OF COUNSEL

**Joseph S. White,** Assistant General Counsel, Criminal Justice Standards and Training Commission, for petitioner.

**Charles T. Whitelock** for respondent.

### OPINION

W. MATTHEW STEVENSON, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, the Division of Administrative Hearings, by its

duly designated Hearing Officer, W. Matthew Stevenson, held a formal hearing in this case on September 4, 1986 in Fort Lauderdale, Florida.

## PROCEDURAL BACKGROUND

The Petitioner, Florida Department of Law Enforcement, Criminal Justice Standards and Training Commission, filed an Amended Administrative Complaint on December 19, 1984 seeking to revoke the law enforcement certification of the Respondent, John W. Dukes. The complaint alleged that the Respondent failed to maintain the qualifications set out under Section 943.13(7), *Florida Statutes*, which requires an officer to have good moral character. The Respondent disputed to factual allegations contained in the complaint and requested a formal hearing pursuant to Section 120.57(1), *Florida Statutes*.

This cause first came on for formal hearing on March 26, 1985 before a hearing officer assigned by the Division of Administrative Hearings. On July 17, 1985, the hearing officer filed a Recommended Order of Dismissal. On August 1, 1985, the Petitioner filed a Petition for Interlocutory Review before the Fourth District Court of Appeal of the hearing officer's Recommended Order. On March 12, 1986, the Court filed an opinion reversing certain evidentiary rulings of the hearing officer and remanding the matter to the Division of Administrative Hearings. See *Florida Department of Law Enforcement v. Dukes*, 484 So.2d 645 (Fla. 4th DCA 1986).

This cause came on for final hearing before the undersigned on September 4, 1986. The court's opinion in *Florida Department of Law Enforcement v. Dukes* was controlling as the law of the case with respect to the evidentiary issues that were decided therein. At the final hearing, the Petitioner called two (2) witnesses. In addition, Petitioner's Exhibits 1-5 were duly offered and admitted into evidence. The Respondent testified in his own behalf. The parties have submitted posthearing Proposed Findings of Fact. A ruling has been made on each proposed finding of fact in the Appendix to this Recommended Order.

## FINDINGS OF FACT

Based upon my observation of the witnesses and their demeanor while testifying, I hereby make the following findings of fact:

1. The Respondent was certified by the Criminal Justice Standards and Training Commission on December 16, 1977 and issued Certificate Number 02-18913.

2. At all times material hereto, the Respondent was employed as a deputy with the Broward County Sheriff's Office.

3. In early December of 1983 the Respondent resided in a home with his ex-wife, Charlene Dukes, and his 14 year old stepdaughter, L.D. The Respondent and Ms. Dukes were divorced in July of 1983. The Respondent was required to transfer his interests in the marital home to Ms. Dukes as part of the divorce decree. A quit-claim deed was prepared shortly after the divorce, but the Respondent did not sign the deed because he continued to live in the marital home.

4. One evening during early December of 1983 the Respondent entered L.D.'s room shortly after she had gone to bed. The Respondent climbed into L.D.'s bed, removed her underclothing, fondled her breasts and had sexual intercourse with her. The Respondent withdrew from his stepdaughter after only about a minute because he "couldn't go through with it." After telling L.D. that he was sorry about what happened, Respondent went into the Florida room, sat down at a desk and cried. L.D. said nothing during the entire incident.

5. On approximately January 15, 1984, L.D. developed a vaginal infection and was taken to a gynecologist by Ms. Dukes. Ms. Dukes apparently discovered what had occurred during the visit to the doctor, because shortly thereafter she accused the Respondent of giving L.D. an infection. The Respondent did not admit his involvement to Ms. Dukes at that time but told her that he was sorry about the "whole ordeal."

6. On January 26, 1984, the Respondent moved out of the home occupied by Ms. Dukes and L.D. When Respondent returned to the home and spoke with Ms. Dukes later that day, she demanded that he sign a quit-claim deed to the marital home. Ms. Dukes told Respondent that if he did not sign the papers that she was going to "have his job" and really "f - - -" him up. The Respondent left without signing the papers.

7. On January 27, 1984, L.D. and her mother reported the incident which occurred between L.D. and Respondent to the Sheriff's Office. On the same day, Detective Scarborough of the Broward County Sheriff's Office took a statement from L.D. reciting her version of the incident. L.D. stated that when the Respondent entered her bedroom, she was already asleep and awoke to find him on top of her. Later that evening, the Respondent gave a statement to Detective Scarborough wherein he admitted having sexual intercourse with L.D. but maintained that the act was consensual. The Respondent stated that he entered L.D.'s bedroom, spoke with her briefly and then had sexual intercourse with her. The Respondent said that he believed the act was consensual because although L.D. didn't say yes: " . . . she didn't say no. There was no physical force involved."

8. On January 30, 1984, the Respondent executed a quit-claim deed to Charlene Dukes with regard to the marital home.

9. On January 31, 1984, Detective Scarborough served an arrest warrant on Respondent for the offense of sexual battery.

10. Later on the same day, Detective Scarborough spoke to Ms. Dukes. She complained that the details of Respondent's arrest had been broadcast on the local television news and expressed concern that the incident could cause embarrassment to her daughter.

11. On February 1, 1984, Ms. Dukes told Detective Scarborough that she did not wish to pursue further prosecution of Respondent because of possible embarrassment to her daughter.

12. On February 2, 1984, Detective Scarborough viewed a video tape of the news broadcast concerning the incident and called Ms. Dukes to assure her that her daughter's name had not been mentioned. Ms. Dukes then told Detective Scarborough that her daughter had recanted the accusation of sexual battery against Respondent.

13. On February 7, 1984, L.D. gave a sworn statement to Detective Scarborough recanting her earlier allegations of sexual battery committed on her by the Respondent. L.D. stated that her earlier statement was "a lie." L.D. went on to explain that she had fabricated the allegation of a rape by her stepfather to prevent herself and her boyfriend from getting into trouble for dating against her mother's wishes. L.D. stated that she had contracted a venereal infection from her boyfriend whom her mother had strictly forbidden her to see. L.D. explained that she made up the story about Respondent to conceal the fact that she had been with her boyfriend.

14. At the formal hearing, Respondent recanted his earlier admission given to Detective Scarborough. The Respondent explained that he falsely admitted to having sexual intercourse with his stepdaughter in order to protect L.D. from getting into trouble with Ms. Dukes.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties to and subject matter of these proceedings. Section 120.57(1), *Florida Statutes*.

The Criminal Justice Standards and Training Commission (the Commission) is charged with the responsibility of regulating the employment and training of law enforcement and correctional officers in the State of Florida. Chapter 943, *Florida Statutes*. No person may be permanently employed or appointed as a law enforcement or

correctional officer by any employing agency unless such person has been certified by the Commission.

Section 943.1395(5), *Florida Statutes* (1984 Supplement) provides that the Commission shall revoke the certification of any officer who is not in compliance with the provisions of Sections 943.13(1)-(10), *Florida Statutes* (1984 Supplement). Section 943.13(7), *Florida Statutes* (1984) Supplement) provides that any person employed as a law enforcement officer shall have a good moral character. The Amended Administrative Complaint in the instant case charges that Respondent is not in compliance with Section 943.13(7) and his certification is therefore subject to revocation pursuant to Section 943.1395(5).

The Respondent argues that his certification may not be subject to discipline under the statute charges because Section 943.1395(5) was not adopted until subsequent to the commission of the offense. (The incident occurred in the latter part of 1983, the statute was enacted in 1984). The Respondent's argument is without merit for several reasons. First, the 1983 law, as well as the current statute, provided for revocation of an officer's certification for failure to maintain good moral character. Section 943.145(3)(a), *Florida Statutes* (1983). Secondly, the Respondent is charged with an ongoing and continuing failure to have good moral character and not merely the commission of a single offense. The misconduct of December 1983 is merely evidence of his failure to meet the present qualifications for certification.

The evidence clearly and convincingly established that the Respondent fondled and had sexual intercourse with his 14 year old stepdaughter as alleged in the Amended Administrative Complaint. The Respondent was a trained law enforcement officer and his confession to such a serious incident carries great weight. The Respondent's testimony that he fabricated his involvement in the incident solely to protect his stepdaughter from her mother's wrath is ludicrous and unworthy of belief. Despite her subsequent recantation, L.D.'s initial account of her victimization by the Respondent was credible and worthy of belief. Although there were some minor discrepancies between Respondent's and L.D.'s perception of the incident, their statements were substantially similar.

In *White v. Beary*, 237 So.2d 263 (Fla. 1st DCA 1970), the Court stated:

> We doubt that the legislature could in its infinite wisdom detail each salient standard for good moral character. What constitutes good moral character is a matter to be developed by facts.

252

In *Zemour, Inc. v. Division of Beverage*, 347 So.2d 1102 (Fla. 1st DCA 1977), the Court stated:

> Moral character . . . means not only the ability to distinguish between right and wrong, but the character to observe the difference; the observance of the rules of right conduct, and conduct which indicates and establishes the qualities generally acceptable to the populace for positions of thrust and confidence.

In *Florida Board of Bar Examiners Re: GWL*, 364 So.2d 454 (Fla. 1978), the Court stated that a finding of lack of "good moral character" in a case involving admission to the bar,

> . . . requires an inclusion of acts and conduct which would cause a reasonable man to have substantial doubts about an individual's honesty, fairness and respect for the rights of others and for the laws of the State and Nation.

Further guidance as to what constitutes a lack of good moral character may be gleaned from recently enacted Section 794.041, *Florida Statutes* (1985). That section provides that any person, standing in a position of familial authority to a child between 12 and 18 years old, that engages in sexual activity with that child may be guilty of a first degree felony. The willingness or consent of the child is not a defense.

The Respondent's act of engaging in sexual intercourse with his fourteen-year-old stepdaughter as described in the findings of fact herein demonstrates a lack of good moral character as generally understood by civilized persons and defined by statutory and case law.

## RECOMMENDATION

Based on the foregoing Findings of Fact and Conclusions of Law, it is,

RECOMMENDED that the Respondent's certification as a law enforcement officer be REVOKED.

DONE and ORDERED this 7th day of November, 1986 in Tallahassee, Florida.